**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS  DIVISION**

| | |
|---|---|
| **MARK MILLER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Cause No. 1:09-cv-583-WTL-JMS** |
| ) | |
| **GREG DAVIS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**ENTRY ON DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

This cause is before the Court on two Motions for Judgment on the Pleadings.  The first motion was filed by Defendants Greg Davis and Jeff Kirk (Docket No. 14).  The second motion was filed by Defendant Davis only (Docket No. 39).  The motions are fully briefed, and the Court, being duly advised, **GRANTS IN PART** the joint motion and **GRANTS** Davis's motion for the reasons and to the extent set forth below.

**I.  RULE 12(C) STANDARD**

In reviewing a motion for judgment on the pleadings, the Court must apply the same standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and therefore must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and there is no need for detailed factual allegations.  However, the statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat. Bancorp*, 499

F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).

## II.  BACKGROUND

Plaintiff Mark Miller was a Sergeant with the Kokomo Police Department ("KPD").  In March 2008, Miller's superior officer, Defendant Greg Davis, accused Miller of obstructing justice and violating KPD's rules and regulations by having a sexual relationship with Donetta Trott.  Davis falsely claimed that Trott was a confidential informant.[1]  In reality, Trott was not a confidential informant, so Miller had not committed any departmental infraction by pursuing sex with her.[2]  Nonetheless, Davis told Miller that if he did not immediately resign his position as a Sergeant and accept a reduction in rank to Patrolman, then he would be terminated, arrested, and indicted.

Three months later, in June 2008, the *Kokomo Perspective* ("*Perspective*") reported that Miller had engaged in a sexual relationship with an confidential informant.  The newspaper printed a transcript of a conversation between Miller and Trott, which included "a sexual encounter" between the two.  (Amended Compl. ¶ 13).  Miller claims that the recording equipment Trott used to capture the conversation was provided by Deputy Sheriff Matt Roberson, who was acting with the knowledge and consent of Sheriff Marshall Talbert.  Miller also accuses Roberson, or another defendant acting on Roberson's behalf,[3] of providing a copy

---

[1] According to Miller, engaging in a sexual relationship with a confidential informant is considered serious officer misconduct.

[2] As the *Kokomo Perspective* aptly noted "if [the alleged informant] wasn't so confidential, then [Miller] was just having sex."  (Amended Compl. ¶ 28).

[3] Miller names Talbert, Davis, Kirk, and John Doe as individuals who may have acted on Roberson's behalf.

2

of the recording to the *Perspective*.

After the *Perspective* article ran, Miller went on medical leave for acute stress.  On June 11, 2008, the *Perspective* ran another article about Miller.  Again, the newspaper referenced his sexual relationship with a "confidential informant" (Trott).  Two weeks later, on June 25, the *Perspective* reported that Miller had been placed on leave for stress.

In September 2008, Davis and Kirk testified at a public hearing that they were investigating Miller for obstructing justice and for violating KPD's rules and regulations by having a sexual relationship with Trott, whom they referred to as a confidential informant. Miller claims that both Davis and Kirk knew, or should have known, that Trott was not a confidential informant.  Later in September the *Perspective* ran an article acknowledging that Trott "was *not* a confidential informant for KPD, and never had been."  (Amended Compl. ¶ 26). However, weeks later, the *Perspective* ran yet another story about Trott in which it referred to her as a confidential informant.

### III.  DISCUSSION

Defendants Davis and Kirk claim, in their Motion for Judgment on the Pleadings, that they are entitled to judgment on three of Miller's claims – Count Five (conspiracy to violate 42 U.S.C. § 1983), Count Eight (false light publicity), and Count Nine (defamation).  Davis also asserts that he is entitled to judgment on Count One (violation of 42 U.S.C. § 1983 – resignation/demotion).

#### A.      Count Five – Section 1983 claim.

In Count Five Miller alleges that Defendants Davis, Kirk, Doe, Talbert, and Roberson conspired to "deprive [him] of his rights secured by the Constitution . . . by disclosing

confidential medical information to the public, by inducing Trott to record her conversation and encounter with Miller, and by disclosing publicly Miller's private facts." (Amended Compl. ¶ 57).

The Defendants first allege that Miller has not properly plead a conspiracy. In order to comport with federal pleading requirements Miller's complaint must contain a short and plain statement of the claim showing that he is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). There is no need for detailed factual allegations. *Id.* However, the Complaint must give the Defendants fair notice of what the claim is and the grounds upon which it rests. *Pisciotta*, 499 F.3d at 633 (citation omitted). Finally, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* In the instant case, Miller's Amended Complaint satisfies these requirements. The Amended Complaint alleges that the Defendants worked together to record a conversation between Miller and Trott and that the Defendants provided the recording to the *Perspective.* (Amended Compl. ¶ 14). While the Defendants may dispute this allegation, as this is their Motion for Judgment on the Pleadings, the facts alleged in Miller's Amended Complaint must be taken as true and all reasonable inferences must be drawn in his favor. Miller's allegation of conspiracy satisfies this standard.

The Defendants also argue that Miller's § 1983 claim fails because the Defendants did not violate Miller's federal rights. Valid § 1983 claims have two elements: (1) a deprivation of a right secured by a federal law; and (2) a defendant who acted under color of state law to deprive the plaintiff of this right. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982). In the instant case, Miller appears to assert a violation of his Fourteenth Amendment right to privacy based on two grounds.

First, Miller claims that his right to privacy was violated by the Defendants' disclosure of his "confidential medical information."  (Amended Compl. ¶ 57).  The only "medical information" that Miller alleges the Defendants disclosed was the fact that Miller was on medical leave for stress.  Miller asserts that as a police officer, this disclosure is "much more problematic" than it would be for other individuals.  (Resp. at 6).  While this may be true, the Seventh Circuit has never held that disclosing that an individual is being treated for stress violates that individual's right to privacy.

An analogous Eighth Circuit case considered whether the Mayor's disclosure that the Chief of Police was undergoing treatment for stress violated the Chief's Fourteenth Amendment right to privacy.  In *Cooksey v. Boyer*, 289 F.3d 513, 515-16 (8th Cir. 2002), the court emphasized that "[n]ot every disclosure of personal information will implicate the constitutional right to privacy," and noted that "the Supreme Court has cautioned against unwarranted expansion of the right [to privacy]."  *Id.* at 516.  The *Cooksey* court found that "the information disclosed and the circumstances of the disclosure are neither shockingly degrading or egregiously humiliating."  *Id.*  "The only information disclosed was the fact that [the plaintiff] was being treated by a psychologist for stress.  Because the field of law enforcement is generally recognized as inherently stressful, it follows that the decision to seek treatment for that stress cannot be characterized as egregiously humiliating."  *Id.*  Accordingly, the Mayor's disclosure was not a violation of the Chief of Police's right to privacy.

Miller's case is analogous to *Cooksey* and the Court finds the reasoning in that case persuasive.  Taking as true Miller's assertion that the Defendants disclosed that Miller was on medical leave for stress, that disclosure did not, as a matter of law, violate Miller's right to

privacy.

Second, Miller claims that the Defendants violated his constitutional rights "by inducing Trott to record her conversation and encounter with Miller, and by disclosing publicly Miller's private facts." (Amended Compl. ¶ 57). Miller's argument appears to be that the Defendants violated his "individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). While the Supreme Court has recognized that the right to "be let alone" is highly valued, *see Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting), the Court has also stated that individuals do not have a "justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police." *United States v. White*, 401 U.S. 745, 749 (1971). Thus, Miller lacked a privacy interest in his conversation with Trott. Having voluntarily conversed with Trott, Miller bore the risk that she would disclose the details of their conversations and of their relationship. Miller cannot hold the Defendants liable under § 1983 because he has not shown a violation of a federally protected right.

At the very least, the Defendants are entitled to qualified immunity on this claim. The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a right is "clearly established" the Court considers whether the contours of the right were sufficiently clear so that a reasonable official would understand that what he is doing violates that right. *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

(1987)).  In order to defeat a claim of qualified immunity, Miller must establish that: (1) his

complaint adequately alleges facts that, if true, constitute a violation of a constitutional right,

and (2) the case law was clearly established at the time of the violation so that the Defendants

would have known that their conduct was unlawful.  *Moss v. Martin*, 473 F.3d 694, 702 (7th Cir.

2007).  To meet his burden under the second element Miller can offer "either a closely

analogous case or evidence that the defendants' conduct is so patently violative of the

constitutional right that reasonable officials would know without guidance from the courts."

*Casteel*, 3 F.3d at 1053.

In the instant case, Miller has not cited any cases indicating that the Defendants' violated

any "clearly established" privacy right.  *See Alvarado v. Picur*, 859 F.2d 448, 452 (7th Cir.

1988).  In *Alvardo*, the Seventh Circuit explained that "qualified immunity is intended to

provide government officials with the ability 'reasonably [to] anticipate when their conduct may

give rise to liability for damages.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 646

(1987).  Thus, "'government officials performing discretionary functions . . . are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow

v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The court then noted that practical application of the

qualified immunity standard "depends substantially upon the level of generality at which the

relevant legal rule is to be identified."  *Id.*  The plaintiff in *Alvarado* argued that his rights to due

process were violated and "in the broadest sense those rights are 'clearly established' under the

Due Process Clause."  *Id.*  However, "[u]nder such a broad definition, plaintiffs would be able to

convert the rule of qualified immunity into a rule of virtually unqualified liability."  *Id*. (citing

*Anderson*, 483 U.S. at 639).  Similarly, the narrow definition of the right espoused by the

defendants "would be able to convert the rule of qualified immunity into a rule of absolute

immunity."  *Id*.  Accordingly, the Seventh Circuit adopted the "middle ground" set forth in

*Anderson*.  "[T]he right the officials is alleged to have violated must have been 'clearly

established' in a more particularized, and hence more relevant, sense:  The contours of the right

must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right."  *Anderson*, 483 U.S. at 640.  Because there is no case law indicating that the

Defendants violated a clearly established right, the Defendants are entitled to qualified immunity

with regard to Miller's § 1983 claim asserted in Count Five.  Accordingly, their Motion for

Judgment on the Pleadings as to Count Five is **GRANTED**.

> **B.**     **Count One – Section 1983 claim.**

Recently, Davis filed a separate Motion for Judgment on the Pleadings with respect to

Count One of the Amended Complaint which is asserted only against him.  In Count One, Miller

asserts that Davis coerced him into resigning and accepting a reduction in rank without notice or

a hearing, which violated Miller's constitutional right to due process.  Davis's motion asserts

that Miller's § 1983 claim must be dismissed because Davis is entitled to qualified immunity.

 Davis argues that *Alvarado* controls.  In *Alvardo*, the defendant, a police lieutenant,

coerced the plaintiff, a police officer who was under investigation, into resigning from the police

force.  *Alvarado*, 859 F.2d at 449.  The plaintiff sued, alleging that the defendant violated his

Fourteenth Amendment due process rights.  The Seventh Circuit held that the lieutenant was

entitled to qualified immunity because the plaintiff did not cite any cases showing that the right

the lieutenant violated was clearly established.

So too in this case.  Miller does not cite any case law supporting his allegation that Davis violated a clearly established right.  The only case that Miller cites, *Illinois* ex rel. *Schoepf v. Board of Education of Morton High Schools, District 201, Cook County, Illinois*, 606 F. Supp. 385 (N.D. Ill. 1985), does not establish that Davis violated a clearly established right.  In *Schoepf*, the court held that the plaintiff was not coerced into resigning and instead was "merely faced with 'two unpleasant alternatives.'" *Id.* at 390.  Although the district court cited a decision from the Court of Claims, *Cosby v. United States*, 417 F.2d 1345, 1355 (Ct. Cl. 1969), which held that an employee can show that his resignation is coerced if the "employee can show that his superior knew or believed that the reasons for the proposed separation could not be substantiated," neither *Schoepf*'s holding nor its reasoning has been adopted by the Seventh Circuit.  Furthermore, the Court's own research has also failed to produce any cases indicating that Davis's actions violated a right that was clearly established at the time of the violation.  Because a reasonable person would not have known that his conduct violated clearly established federal rights, Davis is entitled to qualified immunity.  Accordingly, Davis's Motion for Judgment on the Pleadings with regard to Count One is **GRANTED**.

### C.   Miller's remaining Section 1983 claims.

In Counts Two, Three, and Four,[4] Miller alleges that Defendants Doe, Talbert, and Roberson violated his right to privacy by: "disclosing [his] confidential medical information to the *Perspective*," Amended Compl. ¶ 43; "publicly confirming and discussing Miller's confidential medical information in the *Perspective*," *id.* ¶ 47; and inducing "Trott to record her

---

[4] Count Two is brought against Doe, Count Three is brought against Talbert, and Count Four is brought against Talbert and Roberson.

conversation and sexual encounter with Miller, and publicly disclos[ing] Miller's private facts by providing the recording . . . [to] the *Perspective*." *Id.* ¶ 52.  These are essentially the same claims as Miller raised in Count Five.  Although Doe, Talbert, and Roberson are not parties to the motions for judgment on the pleadings, the Court has the authority to enter judgment *sua sponte*.  *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 385 (7th Cir. 2008), *reh'g denied*; *see also Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986).  Because Miller has not shown a violation of a federally protected right, he has failed to assert a viable § 1983 claim against any of the Defendants.  Accordingly, judgment on the pleadings is also appropriate as to Counts Two, Three, and Four.

### D.     Miller's state law claims.

The Court's jurisdiction on Miller's remaining state law claims is based upon 28 U.S.C. § 1367, which provides for the exercise of supplemental jurisdiction over claims based upon state law that are closely related to the federal claims in a case.  However, "[w]hen the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts."  *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008).  There are exceptions to that general rule, and the court should decide the merits of a supplemental state claim when:  (1) the statute of limitations has run, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is "absolutely clear" how the state claims should be decided.  *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008).  None of those exceptions apply here. Remanding the case to the Howard Superior Court will avoid any statute of limitations

problems; none of this Court's resources have been expended on the state law claims; and it does not appear to the Court that the proper resolution of the state law claims is so obvious as to overcome the presumption that remand is appropriate.  Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims asserted in Miller's Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (Docket No. 14) is **GRANTED IN PART**.  Davis's Motion for Judgment on the Pleadings (Docket No. 39) is **GRANTED**.  Judgment is **ENTERED** as to all federal claims and all Defendants. Miller's state law claims are **REMANDED** to the Howard Superior Court.

SO ORDERED:   12/02/2009

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Blake J. Burgan
Taft Stettinius & Hollister LLP
bburgan@taftlaw.com

John H. Haskin
Haskin Lauter & Larue
jhaskin@hlllaw.com

Hannah Lee Meils
Taft Stettinius & Hollister LLP
hmeils@taftlaw.com

Jay  Meisenhelder
Haskin Lauter & Larue
jmeisenhelder@hlllaw.com

Alan D. Wilson
lawkokomo@sbcglobal.net